dUNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,

                                         14 cr 768 (VLB)

     vs.

DEVONAIRE PRICE,

               Defendant.
------------------------------------------------------------X


## SENTENCING MEMORANDUM OF
## DEFENDANT DEVONAIRE PRICE


**Submitted by:**

**Guy Oksenhendler, Esq.**
**Law Office of Guy Oksenhendler**
**Attorney for Defendant Devonaire Price**
**194 Burns Street, Ste. 1**
**Forest Hills, New York 11375**

**Law Offices of**
**GUY OKSENHENDLER**
194 Burns Street, Suite 1
Forest Hills, New York 11375
917.804.8869
goksenhendleresq@aol.com


February 14, 2022


<u>VIA ECF</u>

Honorable Valerie E. Caproni
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

       Re:    ***United States v. Devonaire Price***
             19 Cr 166 (VEC)
             <u>Sentencing Memorandum         </u>

Dear Judge Caproni:

       Reference is made to the re-sentencing of defendant Devonaire Price before Your Honor currently scheduled for February 23, 2022 in the above-entitled case.  It is respectfully requested that Your Honor impose a non-guidelines sentence below the Statutory Maximum in this case of 120 months on Count One.  It is requested that the Court sentence Mr. Price to seven years on Count One.  In light of Mr. Price's background and character, the facts of the instant offense for which Mr. Price accepts full responsibility, the unique circumstances of Mr. Price' incarceration that warrant the Court's consideration and the ongoing COVID-19 pandemic that has wrecked havoc on the prison system and stretched already inadequate medical attention in the prison's to an unconscionable level where it is almost guaranteed that Mr. Price will not get the medical attention or mental health counseling that he needs, counsel requests Your Honor impose the most lenient sentence pursuant to law when the parties appear before the Court.

       The young man whom will stand before this Court for sentencing has changed considerably since his arrest.  Counsel's impression is that Mr. Price is far more thoughtful as to the impact of his actions which led to his arrest and prosecution.  Perhaps it is the opportunity he has to think about his poor decisions, or a certain maturity he has gained as a result of sincere introspection and reflection on how he was living his life,

Mr. Price is determined to lead a constructive and meaningful life upon his release from prison.  It is respectfully requested that Your Honor give him that opportunity now.

Objections to PSR

After reviewing the Pre-Sentence Report, there are no objections the report the defense shall raise at sentencing.

Introduction

Mr. Price is scheduled to be sentence before this Court on February 23, 2022, pursuant to his guilty plea to Count One of the indictment. This memorandum is is submitted on behalf of Mr. Price to assist the Court in imposing a reasonable and fair sentence pursuant to Rule 32(f) of the Federal Rules of Criminal Procedure.  Mr. Price hopes that once the Court examines his role in the overall scheme, his youth and its attendant characteristics, as well as consider the goals of sentencing, that the Court will find that a variance from the advisory range is appropriate in this case, and that a sentence of  84 months imprisonment, combined with a period of supervision is a "sufficient, but not greater than necessary" to achieve the sentencing purposes of 18 U.S.C. § 3553(a).  We hope that when the Court examines Mr. Price' role in the offense, his youth, his family dynamics, as well as his history and characteristics, the harsh conditions of his incarceration and his lack of medical attention and need for mental health counseling, the ongoing COVID-19 pandemic and the sentencing goals of 18 U.S.C. § 3553(a), that the Court will find that a time served sentence is fair and just in this particular case, giving credit for time already served and    .

18 U.S.C. § 3553(a) Factors

It is well settled, and this Court needs no reminding that in imposing an appropriate sentence in this case, the court must consider the following § 3553(a) factors to impose a sentence "sufficient, but not greater than necessary."  See *United States v. Ministro-Tapia*, 470 F.3d 137, 138 (2d Cir. 2006).  This affords adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant, *inter alia*. The ultimate goal of the sentencing court is to find just punishment in proportion to the crime.

The Supreme Court has made it clear that courts can impose sentences at vaiance with guidelines even in "the mine run cases."  See, Rita v. United States, 551 U.S. 85 (2007); *Gall v. United States*, 552 U.S. 39 (2007); *Kimbrough v. United States,* 552 U.S. 85 (2007); *United States v. Cavera*, 550 F.3d 180 (2d Cir. 2008). The Supreme Court has repeatedly stressed the non-binding nature of the guideline scheme, holding that not only are they not mandatory on sentencing courts, they are also "not to be presumed

reasonable." *Nelson v. United States*, 130 S.Ct 657 (Jan. 26, 2009). Further, courts have been instructed to impose "a sentence sufficient, but not greater than necessary" to meet the objectives of sentencing. *See* 18 U.S.C. § 3553(a). It is suggested that this Court should reject the notion that a "sufficient, but not greater than necessary" sentence exists only within the confines of the advisory guidelines. In conforming with the dictates of individualized sentencing, this Court should find that the proposed sentence of months of incarceration with a period of supervision is a fair and just sentence.

The factors Your Honor must consider under § 3553(a) are:

- The nature and circumstances of the offense, § 3553(a)(1);
- The history and characteristics of the defendant, § 3553(a)(1);
- The need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; afford adequate deterrence to criminal conduct; protect the public from further crimes of the defendant; and provide the defendant with needed rehabilitative or other treatment, § 3553(a)(4), (5);
- The Sentencing Guidelines and the sentencing range they provide, § 3553(a)(4), (5);
- The need to avoid unwarranted disparities in sentencing, § 3553(a)(6); and
- The need to provide restitution to victims of the offense, § 3553(a)(7).

After considering these factors

Nature and Circumstances of the Offense

In the instant case, the defendant pleaded guilty count one of the indictment, Murder in Aid of Racketeering. Per Statute, the maximum sentence that may be imposed is ten years despite the recommended USSG guideline sentence of 168-210 months. In determining that sentence, the Court should considered the defendant's actions, but also his youth and difficult upbinging and other factors to determine the appropriate sentence.

The charges here are serious, and the defendant makes no argument to the contrary.

History and Characteristics of the Defendant

To describe the defendant, counsel finds him to be an intelligent, family oriented young man, who unfortunately never had a father figure in his life. His father left the family when he was 2 years old. His mother was left to support the family and Mr. Price was often left to his own devices unsupervised. It is not surprising then that Mr. Price began using alcohol and marijuana around the age of 13. Unsurprisingly, around that time Mr. Price also began finding himself in trouble with law enforcement. As a result, Mr. Price was unable to complete high school due to being incarcerated during what would have been his junior year of high school.

4

In talking with my client, he has talked repeatedly about his tough upbringing and the difficult environment he grew up in. He has talked about leaving that life behind him knowing that he is lucky to have the support of his mother and half-siblings. He talked about the stability that will bring to his life when his sentence is completed.

It speaking about his future, he feels he can have a career in the construction industry, as he has experience in the industry. He has his OSHA ten hour certificate and is skilled in plastering, roofing and refrigeration. He also completed his GED.

In considering the proposed sentence as fair and just, counsel asks the Court to also consider the decisions made by the defendant during his youth. As an unguided youth, between the ages of 15 through 23, his life was seemingly dictated by a need to survive on the streets. Those poor decisions made while a young adult show the defendant's inability at that time to negotiate his decisions in a manner as a similarly situated mature adult would have. The *Roper* and *Graham* cases establish the concept that children are constitutionally different from adults for sentencing purposes. Their "lack of maturity" and "underdeveloped sense of responsibility" lead to recklessness, impulsivity and heedless risk takings. *United States v. Roper*, 53 U.S. at 569, 125 S.Ct. 1183 (2005). They "are more vulnerable…to negative influences and outside pressures," including pressures from their family and peers; they have limited "control over their own environment" and lack the ability to extricate themselves from horrific, crime-producing settings. *Ibid*. Due to a child's character being less "well formed" compared to an adult, his traits are "less fixed" and his actions are less likely to be "evidence of irretrievable depravity." Id. at 570. Roper and *Graham v. Florida*, 560 U.S. 48, 130 S.Ct.2011, 176 L.Ed.2d 825 (2010), concluded that the Constitution prohibits a sentence emphasized or recommended which are diminished by the distinctive attributes of youth. The distinctions diminish the penological justifications for imposing the harshest sentences for juvenile offenders, or as is suggested here, offenses committed as a young adult, even when the crimes committed are terrible and serious.

It is suggested there is no penological purpose to incarcerate Mr. Price for a sentence longer than seven years. For punishment to be effective, it must be proportionate. Excessive punishment loses its legitimacy and power to deter. Another point to consider is the growing body of research on the criminogenic effect of prison: there is mounting evidence that incarceration *increases* the likelihood of reoffending.[5] A meta- analysis of 85 studies examining the effects of a prison sentence versus probation, home confine ment , or treatment, which controlled for key variables such as age and risk level, found that prison increased post-release offending by 14%

Furthermore, is suggested Mr. Price is an individual determined not to commit future crimes. The most impo1tant factors in preventing recidivism are age, employment, family ties, abstinence from drugs and alcohol, and a realistic reentry plan. I will address each factor and its relevance to Mr. Price briefly .

Criminologist have long recognized that age is the most robust predictor of criminal behavior. A study of the age-crime relationship among young men from high-crime communities  similar to that of Mr. Price found that violent behavior peaks at age 19, drops dramatically from age 19 to 22, and continues declining every year thereafter. Loeber, R. and Farrington, D. (2014). Age-crime curve. *Encyclopedia of Criminology and Criminal Justice,* 12-18.  Based on this model, Mr. Price's risk of reoffending is low. The dramatic improvement in his behavior over the past year is evidence of this trend.

Mr. Price is a skilled construction worker, with strong family ties and support.  It is respectfully requested that Your Honor include counseling as a component of the defendant's sentence as he would benefit from drug counseling and mental wellness counseling.  Accordingly, it is submitted that in light of these factors, there is a high probability he will lead a law abiding life in the future.

COVID-19

Mr. Price requests this court consider the hazards Mr. Price' continued incarceration would face considering the ongoing COVID-19 pandemic.  In recent months, COVID-19 has spread throughout the United States, infecting hundreds of thousands of Americans and inflicting many with severe respiratory illness; many Americans have perished.

On March 11, 2020, the World Health Organization described the COVID19 outbreak as a global pandemic.

According to the Centers for Disease Control (CDC), people who suffer from high blood pressure and rheumatoid arthritis "are at higher risk of getting very sick from this illness." The CDC sets forth that "[b]ased on currently available information and clinical expertise, older adults and people of any age, who have been seriously underlying medical conditions might be at a higher risk for severe illness from COVID-19." Those at high risk include "people who have serious heart conditions…. Many conditions can cause a person to be immunocompromised, including…immune deficiencies…and immune weakening medications. *See* CDC: COVID-19: What if You are High Risk, *available at* https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/high-riskcomplications.html

It is suggested Mr. Price is in the high-risk category of individuals, who face grave health consequences or death from exposure to COVID-19.  Mr. Price advised that his sleeping arrangements at the institution, as with all prison environments, has

inmates held in close quarters. As a result, it is simply impossible for inmates to effectively follow the CDC's published advice that individuals socially distance themselves from other individuals. The closely quartered prison environment does not permit inmates from separating from other inmates by at least six feet. Nor are other CDC recommendations possible, such as avoiding crowded areas, limiting close contact, frequent hand washing, and staying indoors at home.

Although the Bureau of Prisons (BOP) announced a plan to address the COVID- 19 pandemic, no action plan will be able to mitigate the effects of the virus once it infiltrates prison facilities. It has infiltrated the Westchester jail. Media reports indicate that even jail officials and prosecutors are beginning to recognize that the country's prison population is at significant risk.

Courts are beginning to recognize the risk as well. On March 18, 2020, in *United States v. Stephens*, 15-cr-95 (AJN) (S.D.N.Y. Mar. 18, 2020), Judge Alison J. Nathan granted the defendant's emergency motion for reconsideration of denial of bail and ordered the defendant released with conditions. *See id.*, Doc. 2798. Judge Nathan noted that, since the initial bail hearing, "the unprecedented and extraordinarily dangerous nature of the COVID-19 pandemic has become apparent" and that while "there is not yet a known outbreak among the jail and prison populations, inmates may be at a heightened risk of contracting COVID-19 should an outbreak develop." *Id.* at 2 (citing Joseph A. Bick, *Infection Control in Jails and Prisons*, 45 Clinical Infectious Diseases 1047, 1047 (Oct. 2007)). Judge Nathan further noted that "[t]he magnitude of this risk has grown exponentially since the [prior hearing] before this Court; at the end of the day on March 6, New York State had 44 confirmed cases of COVID-19, but that by the end of the day on March 18, that number had climbed to 2,382." *Id.* at 2-3 (citations omitted). In her order, Judge Nathan also cited a recent bail determination in the Eastern District of New York, *United States v. Raihan*, 20-cr-68 (BMC) (E.D.N.Y Mar. 12, 2020), where Judge Brian M. Cogan ordered a defendant released on bail in part because "[t]he more people we crowd into [the MCC], the more we're increasing the risk to the community." *Id.*, Doc. 20 at 10.

Our legislators also now recognize the significant health risks that inmates face as a result of COVID-19. On March 19, 2020, U.S. Senator Kamala D. Harris wrote to the director of the BOP to note that "[e]merging research has demonstrated how dangerous coronavirus is for the elderly and those with underlying conditions and compromised immune systems." (*See* Exhibit 1: Letter from Kamala D. Harris to BOP Director Michael Carvajal dated Mar. 19, 2020.) In her letter, Senator Harris observes that, rather than releasing high-risk inmates, BOP is doubling down on penal measures despite the high stakes, "responding to the threat of coronavirus with extreme measures that both maintain current levels of incarceration and penalize the incarcerated community—including by suspending social and legal visitation, suspending inmate facility transfers, and potentially locking down institutions." (*Id.* at 2.) (citing BOP COVID-19 protocols). Congresspersons Jerold Nadler separately wrote to Attorney General William P. Barr to note that "it is incontrovertible that, if [DOJ] does not act aggressively to address the COVID-19 threat, federal jails and prisons could quickly

become epicenters of the COVID-19 pandemic." (*See* Exhibit 2 Letter from Rep. Jerold Nadler and Rep. Karen Bass to Attorney General Barr dated Mar. 19, 2020 (the "Nadler Letter")

Counsel has yet to have a client who was not negatively affected by the conditions of pre-trial detention during the Covid pandemic.  Mr. Price is no different.  The conditions of pre-trial detention caused Mr. Price stress, being held for long periods in lock down, and few in person family visits.  Accordingly, it is suggested that this factor into the Court's sentencing considerations.

Fine and/or Restitution

Mr. Price is not in a financial position to pay a restitution and it is requested that Your Honor waive the restitution in this case.

Conclusion

Mr. Price is humbled and regretful of what he acknowledges to be poor judgment and decisions in committing the crime for which he has accepted responsibility and is to be sentenced.  It has been observed that sentencing is not an exact science.  Rather, it is a "fluid and dynamic process." *Irizarry v. United States*, 128 S. Ct. 2198, 2203 (2008). Its aim should be to impose a sentence that is reasonable, fair and just, given the facts of a particular case and facts relative to the particular person being sentenced.  The overarching goal is to fashion a sentence that is sufficient, but not greater than necessary.  An analysis of the §3553(a) factors in this case, as well as the"mitigating qualities of youth." *Johnson v. Texas*, 509 U.S. 350, 367, 113 S.Ct. 2658, 125 L.Ed.2d 290 (1993), equivocates in favor of the proposed varied sentence of time seven years and a term of post release supervision.

Thank you for your attention and consideration to this matter and of the issues raised herein.  If you have any questions, please do not hesitate to contact the undersigned counsel at Your Honor's convenience.

Very truly yours,

/s/ *Guy Oksenhendler*

Guy Oksenhendler

cc:     Justin V. Rodriguez, Esq.
        Assistant United States Attorneys
        Southern District of New York

        Clerk of the Court
        United States District Court
        Southern District of New York